**FILED**
**Mar 05, 2024**
**11:55 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | | |
|---|---|---|
| **LORENE WOODS,** | ) | **Docket No. 2021-08-0966** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **ST. FRANCIS SENIOR** | ) | **State File No. 43845-2020** |
| **HEALTHCARE CENTER,** | ) | |
| **Employer,** | ) | |
| **And** | ) | **Judge Robert Durham** |
| | ) | |
| **NEW HAMPSHIRE INS CO.,** | ) | |
| **Insurance Carrier.** | ) | |

---

### COMPENSATION ORDER GRANTING BENEFITS

---

The Court held a Compensation Hearing on February 23, 2024, to determine Ms. Woods's entitlement to future medical treatment and permanent disability benefits for neck complaints that allegedly arose out of treatment for her work-related low-back strain. Although St. Francis agreed that Ms. Woods suffered a compensable low-back strain, it asserted that her neck complaints were not work-related, and the low-back strain resulted in 0% impairment.

The Court holds that Ms. Woods did not prove by expert opinion that her neck condition arose primarily out of and in the course and scope of her employment. Further, she did not prove entitlement to permanent partial disability benefits for her low-back injury. However, St. Francis must pay for reasonable, necessary, and related low-back medical treatment.

### History of Claim

Ms. Woods hurt her low back on June 27, 2020, while trying to keep a patient from falling. She received authorized care from Dr. Christopher Pokabla, who diagnosed a low-back strain. He prescribed steroids and physical therapy and assigned light-duty work

1

restrictions. When Ms. Woods failed to improve, he ordered a lumbar MRI that revealed only degenerative changes.

At his deposition, which Ms. Woods did not attend, Dr. Pokabla testified that he read the MRI findings to Ms. Woods and had explained to her that the degenerative changes were not work-related. He then ordered "work-conditioning" to try to return her to work. According to Ms. Woods, when she told Dr. Pokabla that physical therapy caused her blood pressure to rise to dangerous levels, he dismissively told her that he could not keep her off work for three months for a back strain.

Ms. Woods returned a month later. According to Dr. Pokabla, she only completed about four days of work-conditioning. She continued to complain of low-back pain but also mentioned for the first time that she had "swelling in multiple body parts." He testified that Ms. Woods accused him of not reviewing her MRI, which he thought was "bizarre." He noted that he believed she exhibited signs of "secondary gain," or making complaints that did not line up with her injury so she could remain off work. He said she was not honest with him about her condition and was not trying to get better. Despite this belief, he referred Ms. Woods for a second opinion with neurosurgeon Stephen Waggoner.

Dr. Waggoner testified in his deposition, which Ms. Woods also did not attend, that when he saw her, she only complained of low-back pain and some tingling in her legs. He said she did not complain of neck or upper-extremity pain. Dr. Waggoner reviewed her back MRI and noted moderate degenerative changes not attributable to an acute injury. He diagnosed a back strain and underlying arthritis and recommended physical therapy. He did not assign an impairment or restrictions and said Ms. Woods reached maximum medical improvement on October 1, 2020.

Dr. Pokabla testified that after Dr. Waggoner agreed that Ms. Woods did not require further treatment, his office attempted to schedule a final evaluation, but Ms. Woods refused to come. He agreed she reached maximum medical improvement on October 1 and assigned a 0% impairment with no restrictions. Finally, he confirmed that she never told him about any neck complaints.

Ms. Woods contested Dr. Pokabla's testimony on several points. She said that he showed no interest in her blood pressure and sometimes would not come into the exam room to speak with her. She testified that he left out part of the MRI report when he read it to her and grew angry when she pointed it out, accusing her of dishonesty and malingering. She subpoenaed the nurse case manager to corroborate her testimony, but the case manager said she could not recall events beyond her notes, and they did not contain this information.

She further asserted that the work-conditioning program used extensive weightlifting that someone her age could not safely perform, which led to pain and swelling

in both arms and shoulders. She informed Dr. Pokabla, but he took no action.

Ms. Woods testified that after her visit with Dr. Waggoner, her symptoms worsened. She believed that neither Drs. Pokabla nor Waggoner would treat her, so she sought treatment with neurosurgeon Glenn Crosby. Dr. Crosby performed two neck surgeries.

Dr. Crosby prepared a C-32 medical form causally relating Ms. Woods's neck symptoms and treatment to the physical therapy for her back. He also assigned a permanent impairment rating for her work injuries. St. Francis timely objected to the C-32 and deposed Dr. Crosby. Ms. Woods did not attend this deposition either.

Dr. Crosby testified that Ms. Woods came to him in August 2021 complaining of neck and mid-back pain that she attributed to work-conditioning. A January 2021 neck MRI showed degenerative changes at C5-6 and a bulging disc at C7 but no evidence of an acute injury. Dr. Crosby took another MRI in October that showed Ms. Woods's condition had progressed to herniations at C5-6 and C7-T1.

Dr. Crosby agreed that a patient suffering from neck complaints would normally report those to their treating physician. He further agreed that other than Ms. Woods's history, he had no way of knowing when her neck pain began.

He testified that he believed Ms. Woods's neck condition progressed after her low-back injury, but he could not relate it to the work-conditioning program over natural degenerative changes. He agreed degenerative conditions alone can lead to disc herniations. He further agreed that, based on the MRIs, her condition progressed from bulges to herniations in 2021, and he concluded this was likely just a progression of her underlying degenerative problems.

As for the low back, Dr. Crosby said that Ms. Woods's MRIs were essentially normal. He did not recommend surgery or assign a rating.

Finally, co-worker Shirley Williams testified for Ms. Woods. She worked with Ms. Woods for over 30 years. She described her as a "powerhouse" before her injury and a dependable hard worker who never shirked her duties. She could not recall Ms. Woods complaining of neck or back pain before her work injury.

**Findings of Fact and Conclusions of Law**

Ms. Woods has the burden of proving the elements of her workers' compensation claim by a preponderance of the evidence. Tenn. Code. Ann. 50-6-239(c)(6) (2020). In this case, the parties agreed that Ms. Woods suffered a work-related low-back injury, but they disagreed about her neck injury and entitlement to permanent partial disability benefits and the extent of future medical care.

To prove causation for her neck condition, Ms. Woods must show to a reasonable degree of medical certainty that it "arose primarily of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(12)(A). She must establish causation through expert medical opinion. *Id*. at -102(12)(D).

In this case, the parties submitted the testimony of three physicians.[1] Drs. Pokabla and Waggoner both said that Ms. Woods never told them about neck complaints and did not support her claim that work-conditioning caused her neck condition. Dr. Crosby could only say that her disc herniations might have been due to work conditioning or to a degenerative condition, but since it worsened from bulges to herniations after the therapy, he felt it was likely a progression of her degenerative condition.

Ms. Woods vigorously disputed Dr. Pokabla's and Dr. Waggoner's testimony about whether she told them of neck complaints, and the Court finds Ms. Woods to be a credible witness.[2] The Court also credits Ms. Williams's testimony as to Ms. Woods's strong work ethic. However, even if she told the doctors about her neck symptoms, the law requires an expert opinion establishing causation, and she did not submit it. Thus, the Court denies her request for benefits for her neck condition.

As for her low-back injury, the only admissible expert testimony is that Ms. Woods reached maximum medical improvement on October 1, 2020, and has 0% impairment. Thus, the law does not entitle Ms. Woods to additional temporary or permanent disability benefits. However, St. Francis must continue to pay for reasonable and necessary medical care for her work-related low-back injury.

IT IS, THEREFORE, ORDERED:

1. The Court denies Ms. Woods's requests for permanent partial disability benefits and future medical treatment for her neck condition.

2. St. Francis shall pay for reasonable and necessary medical treatment for Ms. Woods's work-related injury of June 27, 2020. If Dr. Pokabla refuses to treat Ms. Woods, St. Francis shall give her a panel of physicians from which she may choose an authorized doctor.

---

[1] In addition to the C-32, Ms. Woods attempted to submit another one from Dr. Crosby but did not do so within the time allowed by statute, and the Court excluded it. Further, Ms. Woods attempted to introduce medical records but not within the Scheduling Order deadlines, so the Court excluded them. Finally, Ms. Woods tried to submit medical records she asserted were for impeachment and rebuttal purposes, but she did not specify how the information rebutted or impeached the evidence already submitted. Thus, the Court excluded them as well.

[2] After observing Ms. Woods, the Court finds no evidence that "secondary gain" motivated her pursuit for benefits.

3. St. Francis shall pay court costs of $150.00 to the Court Clerk within five business days of this order becoming final.

4. St. Francis shall prepare and file with the Court Clerk a Statistical Data Form within 10 business days of the date this order becomes final.

5. This Compensation Order is an adjudication on the merits. Unless appealed, this order becomes final in 30 days.

**ENTERED March 5 , 2024.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**


**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Ms. Woods's Pre-Compensation Hearing Statement
4. St. Francis's Pre-Compensation Hearing Statement
5. St. Francis's Pre-Trial Brief
6. Ms. Woods's Pre-Trial Brief
7. St. Francis's July 19, 2023, Objection to Form C-32
8. St. Francis's February 14, 2024, Objection to Form C-32
9. Nurse Cheryl Rodgers's Motion to Quash Subpoena
10. Ms. Woods's Motion to Quash Dr. Pokabla's testimony
11. St. Francis's Response to Motion to Quash
12. Ms. Woods's Motion to Compel Ms. Rodgers's testimony
13. St. Francis's Motion in Limine to Exclude Dr. Crosby's C-32 forms
14. Subpoenas
15. St. Francis's Motion to Exclude Late-Filed C-32 form
16. Amended Order on Pre-Trial Motions

Exhibits:
1. Ms. Woods's submitted medical records (for I.D. only)
2. Dr. Pokabla's deposition with attached exhibits

3. Dr. Waggoner's deposition with attached exhibits
4. Dr. Crosby's deposition with attached exhibits

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on March 5, 2024.

| Name | Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Lorene Woods, Self-represented | | | X | Lewoods918@gmail.com |
| Kyle Cannon, Employer's Attorney | | | X | kcannon@gwtclaw.com |

_____
**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**

6



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*